IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| vs. | ) ) | FILE NO.: 1:16-CV-00691-WSD |
| GEORGIA SCHOOL BOARDS ASSOCIATION- RISK MANAGEMENT FUND, | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT GEORGIA SCHOOL BOARDS ASSOCIATION-RISK MANAGEMENT FUND'S RESPONSE IN OPPOSITION TO PLAINTIFF NATIONAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant Georgia School Boards Association-Risk Management Fund ("GSBA-RMF") files its Response in Opposition to Plaintiff National Casualty Company's ("NCC") Motion for Summary Judgment, showing the Court as follows:

NCC's Motion for Summary Judgment exemplifies NCC's approach to this dispute from the beginning. NCC has maintained a steady course of purposefully ignoring Georgia law. NCC refuses to recognize the unique nature of GSBA-RMF even though it has been explained to NCC that the coverage provided by GSBA-RMF is not insurance, but is a risk management program of shared risk pool

coverage that is specifically authorized by the Georgia legislature, which is funded using public funds of its member school boards. Instead, NCC files its brief without mention of the purpose of the Georgia statute authorizing GSBA-RMF because it wants to live in an alternate reality as it refuses coverage to its insureds. NCC to press a meritless argument must proceed in disregard of the reality that unlike it, who agreed to provide for profit insurance coverage for individual school teachers who were members of the Professional Association of Georgia School Teachers ("PAGE") in exchange for a substantial premium, GSBA-RMF provides shared coverage by pooling in a shared risk group the public funds of its participating members. This fundamental difference between GSBA-RMF and NCC is the first and paramount reason why the "insurance" coverage provided by the NCC liability policies is not excess to the shared risk pool coverage provided by the GSBA-RMF Coverage Documents.

NCC not only ignores the public policy that stands in the way of its position, but it ignores the language of the GSBA Coverage Documents that plainly state they are not "insurance" and the plain language under the Section entitled "Insurance" stating the shared risk pool coverage is excess to all "insurance" that may cover the same risk.  After NCC purposefully ignores the different types of coverage being considered between NCC and GSBA-RMF, it then seeks to have any law but

Georgia law apply to the coverage dispute. NCC argues that the NCC insurance policy and the GSBA shared risk pool coverage documents should be treated equally as "insurance," which is a fiction. Then it argues when two primary insurance carriers by their terms claim excess status to the other, the insurer that should be awarded excess status is the one who is wordiest in claiming that excess position. NCC then seeks to introduce "super" or another superlative into NCC's "other insurance" clause when no such word appears in the NCC insurance policy and no such classification has ever been recognized under Georgia law. Georgia law is to the contrary, even among true primary insurers debating true "other insurance" clauses between true primary insurance policies: There is no "one-upmanship" in wording "other insurance" clauses in Georgia. If an insurer was paid to provide primary insurance coverage and seeks to claim excess status above another insurer that was paid to provide primary coverage for the same risk, the two primary insurers share pro-rata as they are not true excess insurers.

## I.      **Additional Background Information**

In its recitation of the Factual Background, NCC omits several facts that are material to the question of whether it is entitled to summary judgment. In addition to the facts provided by NCC, GSBA-RMF submits the following:

GSBA-RMF is an interlocal risk management agency created pursuant to O.C.G.A. § 20-2-2001 et seq., which is a risk sharing arrangement amongst public school boards in Georgia through which the member school boards pool and manage their general liability risks amongst themselves. (Notice of Stipulated Facts "NOSF", ¶¶ 6 and 7) Pursuant to statute (O.C.G.A. § 20-2-2004), GSBA-RMF is not an insurance company or an insurer, and the establishment of the group risk management fund by GSBA-RMF does not constitute doing business as an insurer. GSBA-RMF issues a Member Coverage Document to each participating board of education/school district that sets forth the terms and conditions of what liability risks will be shared and how they will be managed. (NSOF at ¶ 8)

Unlike "for-profit" commercial insurers, GSBA-RMF does not charge a premium for the coverage provided by the Coverage Documents and does not generate a profit from the members' participation in the fund. (NSOF at ¶ 15) The member boards of education are required to make supplemental contributions to the shared risk pool using public funds, even if they have submitted no claims, if liabilities outstrip annual contributions, and they are jointly and severally liable for all liabilities covered by the coverage documents (O.C.G.A. § 20-2-2009). (*Id*. at ¶ 9)

## A. The GSBA-RMF Coverage Documents

GSBA-RMF issued shared risk pool Coverage Documents to the Columbia County Schools, the Douglas County School District, the Muscogee County School District and the McIntosh County Board of Education (Collectively referred to as the "GSBA Coverage Documents"). (NOSF at ¶¶ 10-13 and DOC 5-1, DOC 5-2, DOC 5-3 and DOC 5-4) Each of the GSBA-RMF Coverage Documents explicitly states, "This Coverage Document is not an insurance contract." (DOC 5-1, DOC 5-2, DOC 5-3 and DOC 5-4, General Declarations)

Each of the GSBA Coverage Documents provides coverage to the Named Member and its commissions, boards, authorities and administrative departments within its jurisdiction. (DOC 5-1, 5-2, 5-3 and 5-4. at Section III.1.a.) Additionally, if and to the extent administrators and teachers are found to be acting in the scope of their employment for the Named Member, then the GSBA-RMF Coverage Document will treat them as "Members". (*Id.* at Section III.1.b.) The covered administrators and teachers do not pay for this benefit. (NOSF at ¶ 15)

The Columbia County Coverage Document contains, *inter alia*, the following conditions:

> **4. Insurance**
> If valid and collectible insurance is available to the Member for a loss covered by GSBA-RMF under any coverage parts within this Coverage Document, the

> obligations of GSBA-RMF are excess over the
> available and collectible insurance.

(DOC 5-1 at Section III, 4.) and

> **5. Insurance**
> a. If, but for the coverage afforded by this Coverage
> Agreement, the Member would have insurance
> against a loss otherwise covered hereby, the
> coverage afforded by this Coverage Agreement
> shall be excess over such insurance.

(*Id.* at Common Conditions Specific to Section V—School Leaders Liability, 5.)

Sections III General Conditions of the other GSBA-RMF Coverage

Documents contain, *inter alia*, the following condition:

> **4. Insurance**.
>
> a. If valid and collectible insurance is available to the
> Member for a loss covered by GSBA-RMF under
> any coverage within this Coverage Document, the
> obligations of GSBA-RMF are excess over the
> available and collectible insurance.
>
> b. When this coverage is excess, GSBA-RMF will
> have no duty to defend any Member against any
> "suit" if any insurer has a duty to defend the
> Member against that "suit". If no insurer defends,
> GSBA-RMF will undertake to do so, but GSBA-
> RMF will be entitled to the Member's rights against
> all such insurers.
>
> c. When this coverage is excess over valid and
> collectible insurance available to the Member,
> GSBA-RMF will pay only its share of the amount
> of the loss, if any, that exceeds the sum of:

> (1) The total amount that all such insurance would pay for the loss in the absence of this coverage; and
>
> (2) The total of all deductible and self-insured amounts under all such insurance.

(DOC 5-2. DOC 5-3, DOC 5-4 at Section III General Conditions, 4)

All of the "Insurance" clauses do not limit in any fashion the nature of collectible "insurance" to which the shared risk pool coverage of the Coverage Documents is to be excess. Thus, all insurance, primary, excess or umbrella, being "insurance" that covers the same Member for the same risk is to be exhausted first before the shared risk pool coverage is to be called upon to pay.

**B. PAGE and the Primary Coverage Provided by NCC Policies**

The Professional Association of Georgia Educators ("PAGE") is a voluntary professional association which teachers and administrators pay annual dues to join. (NOSF at ¶ 2) A member benefit of PAGE includes liability insurance purchased specifically to protect PAGE members if they are sued by, *inter alia*, a parent or student. (*Id.* at ¶ 5)

NCC issued two policies to the Policyholder PAGE: (1) Policy No. EPO0000033 for the period July 1, 2012 through July 1, 2013 ("2012 NCC Policy") (DOC 4-4) and Policy No. EPO0000035 for the period July 1, 2013 through July 1, 2014 ("2013 NCC Policy") (DOC 4-2). (NOSF ¶¶ 4 and 5)

7

The NCC Policies each insure - as a primary insurer -  PAGE members up to limits of $1,000,000 per insured, per occurrence and $3,000,000 per occurrence. (DOC 4-2 and 4-4 at Declarations, Item 3) The policies do not identify any underlying limits which they provide coverage in excess of or any deductible or self-insured retention that must be satisfied before coverage is triggered. (*Id*.) The NCC Policies are not true excess policies and they do not require PAGE or any insured to obtain and maintain other insurance, underlying insurance or any other form of underlying/primary insurance as a condition of coverage. (*Id*.)

NCC is a "for profit" risk taker, providing coverage in exchange for the payment of a premium. (NOSF at ¶ 1) NCC charged a premium of $301,494 for the 2012 NCC Policy and a premium of $301,380 for the 2013 Policy. (DOC 4-2 and DOC 4-4 at Endorsement No. 6)

Sections VIII-Conditions of the 2012 NCC Policy and the 2013 NCC Policy contain the following condition:

C. **Other Insurance**

This policy is specifically excess if the insured has other insurance of any kind whatsoever, whether primary or excess, or if the insured is entitled to defense or indemnification from any other source whatsoever, including by way of example only, such sources as state statutory entitlements or provisions. Other insurance includes, but is not limited to, insurance policies, state pools, and programs of self-insurance,

> purchased or established by or on behalf of any EDUCATIONAL UNIT, to insure against CLAIMS arising from activities of the EDUCATIONAL UNIT or its employees, regardless of whether or not the policy or program provides primary, excess, umbrella or contingent coverage.
>
> In addition, Coverage A is specifically excess over coverage provided by any EDUCATIONAL UNIT's or school board's errors and omissions or general liability policies, purchased by the insured's employer or former employers, or self-insurance program or state pools, whether collectible or not, and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to a policy issued to the insured.

(*Id*. at Section VIII., C.)

The GSBA-RMF does not dispute that the above clauses mention "self-insurance program or state pools," but they do so under the title of "other insurance," and shared risk pool insurance is not "insurance." Further, NCC has presented no evidence (as there is none) that the Georgia Insurance Commissioner or other governing body has authorized NCC, or any other commercial insurer, to countermand the purpose of O.C.G.A. § 20-2-2001 et seq., that authorized a risk sharing arrangement amongst public school boards in Georgia through which the member school boards were able to pool and manage their general liability risks amongst themselves. NCC's own clause recognizes this is a form of "self-insurance" and it provides no authority to support that Georgia or any other jurisdiction has

given judicial approval of placing primary commercial insurance excess to primary shared risk pool coverage authorized by the state's legislature.

## II.    Argument and Citations to Authority

NCC is not entitled judgment as a matter of law that any coverage owed to a jointly covered person under one of the NCC Policies is excess to any coverage provided by one of the GSBA-RMF Coverage Documents.

Although curiously missing from NCC's discussion, before reaching the question of whether the "Other Insurance" clauses conflict, it must first be determined whether the GSBA-RMF Coverage Documents are subject to "other insurance" considerations. NCC's position wholly ignores this first step. The GSBA-RMF Coverage Documents are not subject to "other insurance" considerations because they do not constitute insurance, so they do not fall within the ambit of a commercial "other insurance" clause. This intent is evident from the statute authorizing the creation of the GSBA-RMF and the plain language of the Coverage Documents.

Furthermore, even if the "Other Insurance" clauses and the "Insurance Clauses" should be analyzed, clear Georgia law, not the standard invented by NCC, must be applied to determine if the clauses conflict. The "Other Insurance" clauses in the NCC Policies are simply "excess" clauses, not "super excess" clauses,

"escape" clauses or "super escape" clauses. When the "Other Insurance" clauses of the NCC Policies are compared to the "Insurance" clauses of the GSBA-RMF Coverage Documents (in the event the Court gives commercial insurance and shared risk pool coverage the same standing, which GSBA-RMF opposes), then those clauses conflict and cannot be reconciled, as the primary NCC Policies claim excess status over the primary shared risk pool coverage of the GSBA-RMF and the primary GSBA-RMF Coverage Documents claim excess status over all "insurance" of any kind, thus excess status over the primary insurance of NCC.  In sum, both NCC and GSBA-RMF unquestionably provide primary coverage to the subject teachers albeit distinguishable as one being insurance coverage and the other shared risk pool coverage.  Nevertheless, both are primary and both clearly claim excess status to the other.

**A. NCC's "other insurance" argument is precluded because the coverage provided by the GSBA-RMF Coverage Documents is not subject to "other insurance" considerations.[1]**

NCC does not acknowledge the fundamental difference between the commercial liability coverage provided by the NCC Policies and the publicly funded

---

[1] GSBA-RMF position is fully set forth in its Memorandum of Law in Support of Its Motion for Partial Summary Judgment. In order to avoid repetition, GSBA-RMF summarizes its argument below as it is not even raised in NCC's Memorandum of Law In Support of Its Motion for Summary Judgment.

shared risk pool coverage provided by the GSBA-RMF Coverage Document. It ignores the legislative intent that the GSBA-RMF Coverage Documents are not insurance, and the plain language of the Coverage Documents evidence that intent.

The fundamental difference in the nature of coverage is a distinction of importance and repeatedly recognized as so in cases across the country.  Insurance contracts are distinguishable from other risk shifting agreements such as those established by interlocal risk management agencies, like GSBA-RMF, which are not subject to other insurance clauses because <u>the principles of insurance law as to the priority of coverage are not applicable</u>. *See State Farm Mut. Auto. Ins. Co. v. Du Page County*, 955 N.E.2d 67, 74-75 (Ill. App. 2011); *Orange County Water Dist. v. Ass'n of Cal. Water Etc. Auth.*, 54 Cal. App. 4th 772, 778, 63 Cal Rptr. 2d 182 (1987) (citing *City of South El Monte v. Southern Cal. Joint Powers Ins. Authority*, Call App. 4th 1629, 1639-1640, 45 Cal. Rpt. 2d 729 (1995); *Universal Underwriters Ins.*, supra; *State v. Cont'l Cas. Co.*, 126 Idaho 178, 185, 879 P.2d 1111 (1994).

GSBA-RMF provides a totally different type of protection than that provided under the commercial liability policies issued by NCC, for profit insurer, because GSBA-RMF's member school districts share the cost of civil liability jointly and severally, placing public funds at risk; whereas, NCC, a for profit, commercial insurer, takes on the risk in exchange for the payment of a premium, and NCC has

an incentive to avoid covering a risk in order to increase profits. *Antiporek v. Hillside*, 114 Ill. 2d 246, 250-251, 499 N.E.2d 1307 (Ill. 1986) (emphasis added); *see American Nurses Ass'n. v. Passaic General Hospital*, 98 N.J. 83, 484 A.2d 670 (N.J. 1984). GSBA-RMF is not an insurer for the purpose of determining priority of coverage via the "Other Insurance" clauses in the NCC Policies. *See Yaccino v. State Farm Mut. Auto. Ins. Co.*, 346 Ill. App. 3d 431, 440 804 N.E.2d 677 (2004); *Aetna Cas. & Sur. Co. v. James J. Benes & Assocs.*, 229 Ill. App. 3d 413, 593 N.E.2d 1087 (1992); *Schools Excess Liability Fund v. Westchester Fire Ins. Co.*, 117 Cal. App. 4th 1275, 1287, 12 Cal. Rptr. 3d 626 (2004); *Orange County Water Dist.*, supra at 1275.

The "Other Insurance" clauses in the NCC Policies are not applicable to the coverage provided under the GSBA-RMF Coverage Documents because the GSBA-RMF Coverage Documents do not provide *insurance*. The plain wording of the Coverage Documents—"This Coverage Document is not an Insurance Contract," the public policy behind the creation of the interlocal risk management agencies and the preference that public funds not be the first to pay liabilities support this conclusion. *See Antiporek*, supra. Furthermore, that the Georgia legislature specifically stated that an interlocal risk management agency like GSBA-RMF "is not an insurance company and not an insurer under Title 33" (O.C.G.A. §20-2-2004)

evidences a legislative intent that the GSBA-RMF Coverage Documents are not subject to the "other insurance" clauses of the NCC policies.

That the GSBA-RMF Coverage Documents are intended to be excess of all available commercial insurance, including the NCC Policies, is clear from the "Insurance" clauses. The title of the clauses found in the NCC Policies acknowledge they are a form of "insurance" by stating they are excess to "*other* insurance." In contrast, the GSBA-RMF Coverage Documents' clauses are entitled "Insurance," distinguishing that the kind of coverage provided by the Coverage Document is not insurance. Recognizing that the Coverage Documents do not provide insurance, the "Insurance" clauses then state that the coverage is excess over all valid and collectible "insurance"—there is no restriction—meaning any kind of "insurance" covering the same person for the same risk is to exhaust first. The Coverage Documents have a governing structure: They are not insurance; if "insurance" covers the same risk, it pays first, thereby expressing a clear intent that commercial insurance should be exhausted before self-insured public funds are used.

Even though these positions have been clearly presented to NCC previously when demanding NCC provide coverage to its insureds, NCC purposefully turns a blind eye to the public policy intent of the coverages claiming its unilaterally issued commercial policy makes subservient the GSBA-RMF shared risk pool coverage.

Yet, it can never rebut the fact that the Coverage Documents are not insurance. It cannot rebut that the "Insurance" clauses are fundamentally different from the "Other Insurance" clauses due to the unique nature of the Coverage Documents and it cannot rebut the public policy that shared risk pool coverage for participating member school districts should not be tapped until any and all available commercial insurance is exhausted.

**B. Even if applicable, NCC's "other insurance" clauses conflict with the "Insurance" clauses of the GSBA-RMF Coverage Documents, so coverages should be shared on a pro rata basis.**

Even if one were to disregard the public policy distinctions between the publically funded shared risk pool coverage provided the Coverage Documents and the commercial general liability insurance coverage provided by the NCC Policies and one were to treat the coverages and source of coverages on equal footing, NCC's argument wholly ignores clear Georgia law on how "other insurance" clauses are analyzed. Rather than follow clear Georgia precedent, NCC as a primary insurer hopes to create a new category of "other insurance" excess status, claiming its wording of excess is a "super excess" wording. Such a contention is not supported by the NCC policy: The term "super excess" is nowhere to be found in the policy, and NCC's rationale runs entirely contrary to Georgia law addressing why competing primary carriers seeking to claim excess status over other primary

insurers for the same risk and same covered person are obligated to share on a pro-rata basis.

Georgia's rule that for two primary insurers if their two "other insurance" clauses[2] are irreconcilable, they cancel each other out and the insurers share the liability. This clear rule is simple and easy to apply:

> Excess provisions are irreconcilable, **regardless of how they are written**, if "both policies in question provide that if there be other insurance, each shall be responsible only for excess over any other valid and collectible insurance." *Am. Casualty*, 185 Fed. Appx. at 927.

*St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co.*, No. 1:06-CV-204-JOF, 2009 U.S. Dist. LEXIS 23663, *14 (N.D.Ga. Mar. 23, 2009) (emphasis added). The rule gives effect to the intent of each insurer when it accepted a premium that it would "indemnify their insured when a covered loss occurred but to avoid liability for an entire loss when there was double coverage." *Id*. at *13 (citing *Southern Home Ins. v. Willoughby*, 124 Ga. App. 162, 166, 182 S.E.2d 910 (1971)). Stated differently, a primary insurer who has accepted a premium should not be able to wholly escape its indemnity obligations for a covered loss even if other insurance also covers the loss. As applied under Georgia law, the irreconcilable rule prevents

---

[2] GSBA-RMF maintains its Coverage Documents cannot be considered "other insurance" and it is always excess commercial insurance.

the "battle of the draftsmen" whereby each primary insurer attempts to avoid its primary coverage obligations by drafting more specific "other insurance" clauses. *See Home Ins. Co. v. St. Paul Fire Ins. Co.*, 229 F.3d 56, 61 (1st Cir. 2000) (Maine law); *State Farm Mut. Auto. Ins. Co. v. United States Fidelity & Guaranty Co.*, 490 F.2d 407, 411 (4th Cir. 1974) (West Virginia law); *Travelers Lloyds Ins. Co. v. Pac. Emplrs. Ins. Co.*, 602 F.3d 677, 686 (5th Cir. 2010) (Texas law).

Rather than apply this developed rule concerning "other insurance" as dictated by Georgia law, NCC engages frivolously in what has been frowned upon by the "growing weight of authority"—a battle of the draftsmen—by citing to the more specific language and hoping to create a new category of "excess" clause, the "super excess" clause (what is next the "super-duper" excess clause?). *See State Farm Mut. Auto. Ins. Co.*, 490 F.2d at 411. NCC's entire argument hinges on its characterization of the "Other Insurance" clauses in the NCC Policies as being "super excess" clauses. No court applying Georgia law has recognized such a distinction, and several other courts have specifically rejected such an attempted distinction. *See AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315 (M.D.Fla. 2011); *Medical Mut. Ins. Co. v. Am. Cas. Co.*, 721 F. Supp. 2d 447 (E.D.N.C. 2010) *Am. Cas. Co. of Reading, Pa. v. Health Care Indem., Inc.*, 613 F. Supp. 2d 1310 (M.D.Fla. 2009); *RSUI Indem. Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. CV 05-2962-PHX-

JAT, 2007 U.S. Dist. LEXIS 37961 (D.Ariz. May 23, 2007); *Horace Mann Ins. Co. v. United Int'l. Ins. Co.*, 762 F. Supp. 1470 (M.D. Ala.1990); *Sonoco Products Co., Inc. v. Fire & Cas. Ins. Co. of Conn.*, 337 N.J. Super. 568, 767 A.2d 1018 (2001); *Avis Rent-A-Car Sys. v. Allstate Ins. Co.*, 937 P.2d 802 (Colo. App. 1996).

Although NCC characterizes the "Other Insurance" clauses as "what [are] commonly referred to as a 'super excess' clause" [DOC 23-1, p. 9], all but one of the cases relied on by NCC address "super *escape*" clauses. "Escape" clauses are distinguishable from "excess" clauses. "Escape" clauses seek to <u>avoid all liability</u> in the event there is other, available insurance, but "excess" clauses attempt to elevate a primary policy to an excess layer over another primary policy. *See* 8A Appleman, Insurance Law & Practice § 4910. A "super escape" clause, when judicially recognized, seeks to *entirely avoid liability* when there is primary coverage, excess coverage or any other type of coverage available to the insured. *Id*.

NCC's "Other Insurance" clauses cannot be characterized as "escape" or "super escape" clauses, and NCC does not contend that they are such. The plain language of NCC's "Other Insurance" clauses shows that NCC is, as a primary carrier, seeking "excess" status over "insurance" covering the same risk: "This policy is specifically excess if the insured has other insurance of any kind whatsoever[.]"

NCC's heavy reliance on *Maryland Casualty Co. v. Horace Mann Ins. Co.*, 551 F. Supp. 907 (W.D.Pa. 1982) is misplaced. No court applying Georgia law has recognized "super excess" clauses or found that the language in such a "super excess" clause has abated any conflict between competing "other insurance" clauses.

In *Maryland Cas. Co.*, the "other insurance" clause of the Maryland policy read,

> If collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over the limit provided in this policy.

*Id*. at 908-909. The Horace Mann policy's "other insurance" clause read,

> This policy does not apply to that portion of any claim made or suit brought against the insured which is insured by another valid policy or policies of insurance, whether primary or excess, or which is insured by any program or programs of self-insurance, whether primary or excess, nor shall the Company be liable to make any payment in connection with any such portion of a claim or suit.

*Id*. at 909.

The Court in *Maryland Cas. Co* finely parsed out the words finding that the Maryland Casualty "other insurance" clause was merely an "excess" clause because it "affords protection to the insured after exhaustion of the primary coverage," and

focusing on the language "whether primary or excess," found that the Horace Mann Clause to be a "secondary excess layer of coverage."

The nature of word play analysis in *Maryland Cas.* is entirely incompatible with the analysis undertaken by the Georgia courts as reflected in *St. Paul Fire & Marine Ins. Co.*, supra, in which the court, applying Georgia law, found no material distinction between two competing "other insurance" clauses where one of the clauses contained the language "whether primary, excess, contingent or any other basis."[3] In that case, one primary policy's "other insurance" clauses stated, in relevant part, "This insurance is excess over any of the other insurance, whether primary, excess, contingent or any other basis." *Id*. at *17. The second policy's "other insurance" clause stated, in relevant part, "[W]e'll apply this agreement as excess insurance over any part of any other insurance which provides [coverage provided by the other primary policy at issue]." *Id*. at *19. The court explained that under Georgia law, what is material is that if two primary policies cover the same risk and contain "other insurance" clauses that are irreconcilable as they both seek excess status over the other, the clauses cancel each other out and the insurers share in liability pro rata:

---

[3] The decision in *Lumbermens Mut. Cas. Co. v. Allstate Ins.*, 417 N.E.2d 66, 435 N.Y.S.2d 953 (1980) is also incompatible with the interpretation of "other insurance" clauses under Georgia law.

> Excess provisions are irreconcilable, *regardless of how they are written*, if "both policies in question provide that if there be other insurance, each shall be responsible only for excess over any other valid and collectible insurance. *Am. Casualty*, 185 Fed. Appx. at 927. *See also Bradshaw v. St. Paul Fire & Marine Ins. Co.*, 226 F. Supp. 569 (N.D. Ga. 1964) (Morgan, J.) (finding policies mutually repugnant); *State Farm Fire & Casualty Co. v. Holton*, 131 Ga. App. 247, 205 S.E.2d 872 (1974) (same); *[Southern Home Ins. v.] Willoughby*, [124 Ga. App.] 162, [182 S.E.2d 910 (1971)] (explaining the rationale between the pro rata rule).

*Id*. at *14 (emphasis added); *accord Pila. Indem. Ins. Co. v. First Multiple Listing Servs.*, No. 2:14-CV-154-RWS, 2016 U.S. Dist. LEXIS 33647 (N.D.Ga. Mar. 22, 2016) ("In other words, both policies are primary unless other insurance applies, in which case both are excess"); *Allied Prop. & Cas. Ins. Co. v. Bed Bath & Beyond, Inc.*, No. 1:12-CV-01265-RWS, 2014 U.S. Dist. LEXIS 42977 (N.D.Ga. Mar. 31, 2014) ("Since the Other Insurance provisions in the two policies each purport to be excess over other insurance, the provisions cannot be reconciled and cancel each other out"). The court concluded,

> Having read and compared the language of the St. Paul excess clause and the excess language in the Endorsement and the bulk of the Valley Forge policy, this court finds that they cannot be reconciled. Under Georgia law, they cancel each other out and both policies act as primary coverage.

*Id*. at *21-22.

NCC's primary Policies' "Other Insurance" clauses and GSBA-RMF's primary Coverage Documents' "Insurance" clauses essentially seek to elevate their primary coverage to excess coverage above the other coverage document. The "Insurance" clauses of the GSBA-RMF clauses seek excess status over any nature of "insurance" covering the same risk (GSBA-RMF contends properly following the public policy of the shared risk pool coverage). Thus they do not need to list all the types of commercial "insurance" – primary, excess, umbrella, etc. – hence, not stating they are excess whether the insurance covering the same risk is "primary or excess" is irrelevant. *See Am. Cas. Co. v. MAG Mut. Ins. Co.*, 185 Fed. Appx. 921, 926 (11th Cir. 2006) (noting the policy's "other insurance" clause was not limited to "other primary insurance": "It simply states in relevant part that '[i]f you have other insurance which applies to the loss, the other insurance must pay first"); *Phila. Indem. Ins.*, supra (finding "other insurance" clause referencing other primary or excess insurance irreconcilable with clause that referenced only "other valid and collectible insurance").

Courts addressing the phrase "whether on a primary, excess or contingent basis" have concluded that the phrase does not add anything to the all-inclusive "any other valid insurance" phrase because the listings of coverage still fall within the breadth of the latter phrase. *See Ins. Co. of North Amer. v. Continental Cas. Co.*, 575

F.2d 1070, 10-73-74 (3rd Cir. 1978); *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1324 (M.D.Fla. 2011) (quoting *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 482 N.E. 2d 12 (N.Y. 1985); *United States Fidelity & Guaranty Co. v. Liberty Mut. Ins. Co.*, 327 F. Supp. 462, 468 (M.D.Pa. 1971) (quoting *Rocky Mountain Fire & Cas. Co. v. Allstate Ins. Co.*, 12 Ariz. App. 31, 474 P. 2d 38 (1970). That the NCC Policies identify specific types of policies that it purports to be excess to does not change the basic nature of the "Other Insurance" clauses, as the possible existence of such other coverages is not different from the contingency inherent in the "Insurance" clause of the GSBA-RMF Coverage Documents: "If valid and collectible insurance is available…" *See Amer. Cas.*, supra.

The NCC Policies are not "akin to traditional excess coverage." First and foremost, the NCC Policies provide primary coverage. Other than in the "Other Insurance" clauses, they do not contemplate providing excess coverage. (DOC 4-2; DOC 4-4) They do not state that they are "excess" policies or "umbrella" policies. They do not identify any specific policies or limits which they are excess over. No NCC policy requires that underlying insurance be purchased and maintained during the policy period as a condition of NCC having a binding obligation to defend and

indemnify any insured.  There is nothing about the NCC Policies that makes them akin to an excess policy.

### III.   Conclusion

Based on the foregoing, GSBA-RMF respectfully requests that the Court deny Plaintiff National Casualty Company's Motion for Summary Judgment for the reasons set forth above.

Respectfully submitted this 10th day of October 2016.

THE JOHNSON INSURANCE LAW GROUP, LLC

s/ Thomas Wingfield
C. Michael Johnson
Georgia Bar No. 392550
Laurie E. Dugoniths
Georgia Bar No. 232927
Thomas Wingfield
Georgia Bar No. 770653

1629 Monroe Drive
Atlanta, GA 30324
Telephone:  (404) 442-8834
Facsimile:  (404) 442-8835

*Counsel for Defendant Georgia School Boards Association - Risk Management Fund*

24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE NO.: 1:16-CV-00691-WSD |
| GEORGIA SCHOOL BOARDS ASSOCIATION- RISK MANAGEMENT FUND, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATION OF FONT**

I certify that the foregoing document was prepared using Times New Roman, 14-point, as approved Local Rule 5.1(C).

This 10th day of October, 2016.


s/ Thomas Wingfield

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| vs. | ) ) | FILE NO.: 1:16-CV-00691-WSD |
| GEORGIA SCHOOL BOARDS ASSOCIATION-RISK MANAGEMENT FUND, | ) ) ) ) | |
| Defendant. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing upon all parties to this matter via the United States Mail and CM/ECF (Pacer) system which will automatically send email notification of such filing to the following attorneys of record:

Michael J. Rust
David C. Sawyer
Gray, Rust, St. Amand, Moffett &
Brieske, LLP
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326

*Attorneys for Plaintiff National
Casualty Company*

Jay Sever
Katie Myers
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130

*Attorneys for Plaintiff National Casualty
Company*

This 10th day of October 2016.

s/ Thomas Wingfield