# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

NATIONAL CASUALTY
COMPANY,

            **Plaintiff,**

    **v.**

GEORGIA SCHOOL BOARDS
ASSOCIATION-RISK
MANAGEMENT FUND,

            **Defendant.**

**1:16-cv-691-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Georgia School Boards-Risk

Management Fund's ("Risk Fund") Motion for Partial Summary Judgment [22],

and Plaintiff National Casualty Company's ("National") Motion for Summary

Judgment [23].

## I.     BACKGROUND

    A.     <u>Introduction</u>

This is a dispute between an insurance company and a risk management

agency.  National and Risk Fund provide overlapping liability coverage to

members of a professional association.  National's insurance policies require

National to provide primary coverage unless coverage is available from another

source.  If other coverage is available, National's coverage is only excess.

Risk Fund's coverage agreements contain a similar provision, under which

Risk Fund's coverage is excess if other insurance covering the same risk is in

place.  These apparently conflicting provisions came to a head when several

individuals incurred liabilities covered by both parties.  Each party contends that

the other has primary coverage obligations for the liabilities claimed, and that its

own coverage obligations are excess.  The Court is required to determine the extent

of the parties' coverage obligations in light of the competing provisions.

 B. <u>National's Coverage</u>

 National is an insurance company.  (Defendant's Statement of Material Facts

[22.2] ("DSMF") ¶ 1).  The Professional Association of Georgia Educators

("PAGE") is a professional association of teachers and administrators.  (DSMF

¶ 2).  National issued insurance policies to PAGE for the July 1, 2012, to

July 1, 2013, and July 1, 2013, to July 1, 2014, periods (together, the "Policies").

(DSMF ¶¶ 3-4).  The Policies provide the following liability coverage to PAGE

members:

 **Coverage A—Liability Coverage**

 The Company will pay on behalf of the insured all sums which the
 insured shall become obligated to pay by reason of liability imposed
 by law or for monetary damages resulting from any **CLAIM** made
 against the insured arising out of an **OCCURRENCE** in the course of

the activities of the insured in his/her professional capacity and caused by any acts or omissions of the insured or any other person for whose acts the insured is legally liable.  The Company shall defend any suit seeking monetary damages which are payable under the terms of the policy, even if such suit be groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any **CLAIM** or suit as it may deem expedient.

(DSMF ¶¶ 5-6).

The Policies contain a provision limiting coverage for liabilities covered by

"other insurance" (National's "Other Coverage Provision"):

**Other Insurance**

This policy is specifically excess if the insured has other insurance of any kind whatsoever, whether primary or excess, or if the insured is entitled to defense or indemnification from any other source whatsoever, including by way of example only, such sources as state statutory entitlements or provisions.  Other insurance includes, but is not limited to, insurance policies, state pools, and programs of self-insurance, purchased or established by or on behalf of any **EDUCATIONAL UNIT**, to insure against **CLAIMS** arising from activities of the **EDUCATIONAL UNIT** or its employees, regardless of whether or not the policy or program provides primary, excess, umbrella or contingent coverage.

In addition, Coverage A [Liability Coverage] is specifically excess over coverage provided by any **EDUCATIONAL UNIT'S** or school board's errors and omissions or general liability policies, purchased by the insured's employer or former employers, or self-insurance program or state pools, whether collectible or not, and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to a policy issued to the insured.

(DSMF ¶ 7).

C.    Risk Fund's Coverage

Risk Fund is a risk management agency created under O.C.G.A. § 20-2-2001 *et seq.* (DSMF ¶¶ 16-17). It is an association formed by boards of education to share their liability risks. (O.C.G.A. § 20-2-2001(6); DSMF ¶ 17). Risk Fund's members include Columbia County Schools, Douglas County School District, Muscogee County School District, and McIntosh County Board of Education. (DSMF ¶¶ 20-23). Risk Fund "is not an insurance company or an insurer" under Georgia insurance law. O.C.G.A. § 20-2-2004.

Risk Fund's risk-sharing arrangement is set out in coverage agreements entered into by Risk Fund and its members (the "Coverage Agreements"). (DSMF ¶ 18). Under the Coverage Agreements, Risk Fund provides liability coverage to members and their employees, including PAGE members.[1] The coverage periods are July 1, 2012, to July 1, 2013, and July 1, 2013, to July 1, 2014. (DSMF ¶¶ 18, 20-23). Risk Fund's coverage includes liability coverage for personal injury, bodily injury, property damage, negligent acts, wrongful acts, and sexual abuse. (See [5.1]-[5.4]). Risk Fund is required to "pay [amounts a] Member becomes legally obligated to pay as damages" and to "defend . . . Member[s] against any

---

[1]    The Coverage Agreements define the boards of education and their employees, acting within the scope of their employment, as "members." (See, e.g., [5.2] at 14).

'suit' seeking those damages." (See, e.g., [5.3] at 30; see generally [5.1]-[5.4]).

Risk Fund's members are jointly and severally liable "for all legal obligations"

arising under the Coverage Agreements. (DSMF ¶¶ 18-19; O.C.G.A. § 20-2-

2009).

The Coverage Agreements contain a provision limiting coverage where

insurance is available from another source (Risk Fund's "Other Coverage

Provision"):

**4. Insurance.**

If valid and collectible insurance is available to the Member for a loss
covered by [Risk Fund] under any coverage parts within this
Coverage Document, the obligations of [Risk Fund] are excess over
the available and collectible insurance.

(DSMF ¶¶ 25, 27).[2]

D.    Individuals Covered by Both National and Risk Fund

From 2014 to 2016, several lawsuits were filed against PAGE members

covered under National's Policies and Risk Fund's Coverage Agreements (the

"Covered Individuals"). (See DSMF ¶¶ 28-32). In June 2014, for example, an

elementary school student filed a negligence action against his school principal, a

---

[2]    This version of Risk Fund's Other Coverage Provision appears in the
Coverage Agreement for July 1, 2012, to July 1, 2013. The version of the Other
Coverage Provision in the Coverage Agreements for July 1, 2013, to July 1, 2014,
omits the word "parts" but otherwise is identical.

PAGE member and employee of Columbia County School District. ([5.7]; DSMF ¶ 29). The student alleged that, as a result of the principal's negligence, he fell from a playground ladder and injured himself. ([5.7] ¶¶ 13, 17). In September 2015, a high school student filed a negligence action against her chemistry teacher, a PAGE member and employee of Douglas County School District. ([5.8]; DSMF ¶ 28). The student alleged that, as a result of the teacher's negligence, she was burned during a chemistry experiment. ([5.8] ¶¶ 5-23). Similar lawsuits have been filed against other PAGE members employed by Risk Fund's members, including employees of Columbia County School District, Muscogee County School District, and McIntosh County School District. (DSMF ¶¶ 30-32).

National refused to defend or indemnify these Covered Individuals until Risk Fund's coverage, under the Coverage Agreements, was exhausted. (See DSMF ¶¶ 33-38). National claims the Other Coverage Provision in the Policies makes National only an excess insurer. Risk Fund contends that National is the primary insurer and that Risk Fund is only required to provide excess coverage. Faced with National's refusal to provide primary coverage, Risk Fund defended, indemnified and paid settlement amounts on behalf of the Covered Individuals, pending resolution of this action. (See DSMF ¶¶ 33-38).

E.     Procedural History

On March 3, 2016, National filed its Complaint for Declaratory Judgment [1] and, on April 28, 2016, it filed its Amended Complaint for Declaratory Judgment [4] ("Amended Complaint").  The Amended Complaint seeks a declaration that Risk Fund has "the primary duty to defend and indemnify" Covered Individuals against whom suits have been filed.  (Compl. at 9-10).

On May 20, 2016, Risk Fund filed its Counterclaim for Breach of Contract, Contribution, Unjust Enrichment and Declaratory Judgment [5].  Count 1 asserts a breach of contract claim, alleging that National violated the Policies by refusing to defend or indemnify the Covered Individuals.  ([5] ¶ 101).  Count 2 asserts a claim for unjust enrichment and equitable contribution, alleging that National was unjustly enriched by Risk Fund's defense and indemnification of Covered Individuals, and that Risk Fund is equitably entitled to contribution from National for amounts paid by Risk Fund.  ([5] ¶¶ 108-109).  Count 3 seeks a declaratory judgment that National is the primary insurer of PAGE members covered under the Policies and the Coverage Agreements or, in the alternative, that National and Risk Fund must share, pro rata, defense and indemnity obligations.  ([5] at 39).  Count 4 seeks attorney's fees, under O.C.G.A. § 13-6-11, on the grounds that

National acted in bad faith, was stubbornly litigious, or caused Risk Fund unnecessary trouble and expense. ([5] at 40).

On September 16, 2016, National filed its Motion for Summary Judgment on its claim for declaratory relief and on Risk Fund's counterclaim for declaratory relief. Risk Fund also filed its Motion for Partial Summary Judgment, requesting a declaration that (1) "coverage owed to jointly covered persons under [National's Policies] is primary to coverage provided under" Risk Fund's Coverage Agreements, or (2) the parties "must share coverage owed to jointly covered individuals on a pro rata basis." ([22] at 1-2).

## II.    LEGAL PRINCIPLES

### A.    Legal Standard for Summary Judgment

"Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ahmed v. Air France-KLM, 165 F. Supp. 3d 1302, 1309 (N.D. Ga. 2016); see Fed. R. Civ. P. 56. "An issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" W. Grp. Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1360 (11th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is genuine 'if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'" Id. at 1361

(quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment "bears the initial responsibility of

informing the district court of the basis for its motion, and identifying [materials]

which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The movant[] can meet this

burden by presenting evidence showing there is no dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of

some element of its case on which it bears the ultimate burden of proof."

Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

The moving party need not "support its motion with affidavits or other similar

materials *negating* the opponent's claim." Celotex, 477 U.S. at 323. Once the

moving party has met its initial burden, the nonmoving party must demonstrate that

summary judgment is inappropriate by designating specific facts showing a

genuine issue for trial. Graham, 193 F.3d at 1282. The nonmoving party "need

not present evidence in a form necessary for admission at trial; however, he may

not merely rest on his pleadings." Id. "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

"If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." Apcoa, Inc. v. Fid. Nat. Bank, 906 F.2d 610, 611 (11th Cir. 1990) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 250). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)); cf. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict" (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal quotation marks omitted))).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those

facts." <u>Scott</u>, 550 U.S. at 380. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u> "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." <u>Graham</u>, 193 F.3d at 1282. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." <u>Id.</u>

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

<u>Celotex</u>, 477 U.S. at 322-23; <u>see</u> <u>Freeman v. JPMorgan Chase Bank N.A.</u>, -- Fed. App'x --, 2017 WL 128002, at *4 (11th Cir. Jan. 13, 2017) (same); <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1247 (11th Cir. 1999) ("If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.").

B.   Insurance Contract Interpretation under Georgia Law

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms."  Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 663 (Ga. 1996); see Yeomans & Assoc. Agency, Inc. v. Bowen Tree Surgeons, Inc., 618 S.E.2d 673, 677 (Ga. Ct. App. 2005) ("[A]n insurance policy is simply a contract, the provisions of which should be construed as any other type of contract.").

When language in the insurance policy "is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured."  Georgia Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016); see Donaldson v. Pilot Life Ins. Co., 341 S.E.2d 279, 280 (Ga. Ct. App. 1986) ("Where the language fixing the extent of coverage is unambiguous, . . . and but one reasonable construction is possible, this court must enforce the contract as written.").  "[T]he plain meaning of the terms must be given full effect without straining to extend coverage where none was contracted or intended."  State Farm Fire & Cas. Co. v. Bauman, 723 S.E.2d 1, 3 (Ga. Ct. App. 2012).  "[A]n insurance company is free to fix the terms of its policies as it sees fit, so long as such terms are not contrary to law." Henning v. Cont'l Cas. Co., 254 F.3d 1291, 1295 (11th Cir. 2001) (internal

quotation marks omitted) (quoting Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 6 (Ga. 1996)).

If the terms of the policy are ambiguous, "the statutory rules of contract construction [are] applied." Pomerance v. Berkshire Life Ins. Co. of Am., 654 S.E.2d 638, 640 (Ga. Ct. App. 2007). Ambiguities in the policy are "strictly construed against the insurer as the drafter of the document." Federated Mut. Ins. Co. v. Ownbey Enterprises, Inc., 627 S.E.2d 917, 921 (Ga. App. Ct. 2006); see Giddens v. Equitable Life Assur. Soc. of U.S., 445 F.3d 1286, 1297 (11th Cir. 2006) ("[W]hen a policy is ambiguous, or is capable of two reasonable interpretations, it is construed in the light most favorable to the insured and against the insurer."). "[A] word or a phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." Ownbey Enterprises, 627 S.E.2d at 921 (citation and internal quotation marks omitted); see Bogard v. Inter-State Assur. Co., 589 S.E.2d 317, 318 (Ga. Ct. App. 2003) ("Under Georgia law, an insurance contract is considered ambiguous only if its terms are susceptible to two or more reasonable interpretations.").

"[T]he interpretation of an insurance policy, including the determination and resolution of ambiguities, is a question of law for the court to decide." Giddens,

445 F.3d at 1297 (citing O.C.G.A. § 13-2-1); see Pomerance, 654 S.E.2d at 640

("The proper construction of a contract is a question of law for a court to decide.").

## III.  DISCUSSION

The dispute here requires the Court to interpret apparently conflicting

provisions in National's Policies and Risk Fund's Coverage Agreements.  National

argues its Other Coverage Provision requires it to provide excess, rather

than primary, coverage to the Covered Individuals because "other insurance" is

available under Risk Fund's Coverage Agreements.  Risk Fund argues its own

Other Coverage Provision requires it to provide only excess coverage because

"valid and collectible" insurance exists under National's Policies.  That is, each

party claims the other is required to provide primary coverage to the Covered

Individuals, and that its own coverage obligations are excess.  The question here is

how to reconcile the parties' competing interpretations.

### A.  Whether National's Other Coverage Provision Applies to Risk Fund's Coverage

National's Other Coverage Provision states:

**Other Insurance**

This policy is specifically excess if the insured has other insurance of
any kind whatsoever, whether primary or excess, or if the insured is
entitled to defense or indemnification from any other source
whatsoever, including by way of example only, such sources as state
statutory entitlements or provisions.  Other insurance includes, but is

not limited to, insurance policies, state pools, and programs of self-insurance, purchased or established by or on behalf of any **EDUCATIONAL UNIT**, to insure against **CLAIMS** arising from activities of the **EDUCATIONAL UNIT** or its employees, regardless of whether or not the policy or program provides primary, excess, umbrella or contingent coverage.

In addition, Coverage A [Liability Coverage] is specifically excess over coverage provided by any **EDUCATIONAL UNIT'S** or school board's errors and omissions or general liability policies, purchased by the insured's employer or former employers, or self-insurance program or state pools, whether collectible or not, and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to a policy issued to the insured.

(DSMF ¶ 7).

Risk Fund contends its coverage is not "other insurance" within the meaning of National's Other Coverage Provision because, under Georgia law and the terms of the Coverage Agreements, Risk Fund is not an insurer and does not provide "insurance" coverage.[3] National argues Risk Fund's coverage falls within National's Other Coverage Provision because (1) the provision expressly applies to coverage provided by "state pools" and "programs of self-insurance," and (2) the provision is triggered when "the insured is entitled to defense or indemnification from" any source *other than* insurance. (DSMF ¶ 7).

---

[3] Georgia law provides that Risk Fund "is not an insurance company or an insurer under" Georgia's insurance code, and each Coverage Agreement states "This Coverage Document is not an insurance contract." O.C.G.A. § 20-2-2004; ([5.1]-[5.4]).

National's Other Coverage Provision states that coverage "is specifically excess over coverage provided by any **EDUCATIONAL UNIT'S** or school board's . . . self-insurance program or state pools . . . ."  (DSMF ¶ 7).  It is undisputed that Risk Fund is an "association formed by boards of education" to develop and administer a "group self-insurance fund[]," which is a "pool of public moneys established . . . from contributions of [Risk Fund's] members in order to pool the risks of general liability."  O.C.G.A. §§ 20-2-2001(5)-(6).  Risk Fund thus provides coverage through a "self-insurance program or state pool[]," and Risk Fund's coverage falls within National's Other Coverage Provision.  (DSMF ¶ 7).

Even if Risk Fund did not provide coverage through a "self-insurance program or state pool," its coverage otherwise falls within National's Other Coverage Provision.  The provision states that "[t]his policy is specifically excess if the insured has other insurance of any kind whatsoever, whether primary or excess, *or if the insured is entitled to defense or indemnification from any other source whatsoever*, including by way of example only, such sources as state statutory entitlements or provisions."  (DSMF ¶ 7 (emphasis added)).  The policy terms plainly encompass both insurance and *non-insurance* sources of indemnification or defense.  Even accepting Risk Fund's argument that its

coverage does not constitute "insurance," Risk Fund provides coverage

"entitl[ing] [its members] to defense or indemnification."  This brings Risk Fund's

coverage within National's Other Coverage Provision.  That the provision is

entitled "Other Insurance" does not change this result, because the body of the

provision unambiguously applies to coverage from sources other than commercial

insurance.  See In re G-I Holdings, Inc., 755 F.3d 195, 203 (3d Cir. 2014) ("The

title of a section cannot contradict or rewrite the plain language of the contractual

provisions within that section."); Lumenate Techs., LP v. Baker, No. 1:14-cv-125,

2014 WL 1664476, at *3 (S.D. Ohio Apr. 25, 2014) ("Section headings in a

contract are not binding provisions, they merely guide the reader to certain

provisions."); 17A Am. Jur. 2d Contracts § 372 (2d ed. May 2017 Update)

("Although courts may consider the title of a contract provision or section to

interpret a contract, the greater weight must be given to the operative contractual

clauses of the agreement.").

B.     Reconciliation of National's Other Coverage Provision with
       Risk Fund's Other Coverage Provision

The Court next considers how to reconcile National's Other Coverage

Provision with Risk Fund's Other Coverage Provision.  Both provisions purport to

limit coverage where coverage is available from another source.  "Georgia caselaw

indicates that, when two insurance policies covering the same risk both contain

'other insurance' clauses that cannot be reconciled, those clauses cancel each other out and the insurers share in liability pro rata." The Am. Cas. Co. of Reading v. MAG Mut. Ins. Co., 185 F. App'x 921, 925 (11th Cir. 2006). "Excess provisions are irreconcilable, regardless of how they are written, if both policies in question provide that if there be other insurance, each shall be responsible only for excess over any other valid and collectible insurance." St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co., No. 1:06-cv-2074, 2009 WL 789612, at *4 (N.D. Ga. Mar. 23, 2009); see State Farm Fire & Cas. Co. v. Holton, 205 S.E.2d 872, 874 (Ga. Ct. App. 1974) ("Where . . . both insurers attempt to limit their liability to excess coverage 'if there is other insurance,' then the clauses are irreconcilable, cancel each other out, and the liability is to be divided equally between them.").

National's Other Coverage Provision states:

**Other Insurance**

This policy is specifically excess if the insured has other insurance of any kind whatsoever, whether primary or excess, or if the insured is entitled to defense or indemnification from any other source whatsoever, including by way of example only, such sources as state statutory entitlements or provisions. Other insurance includes, but is not limited to, insurance policies, state pools, and programs of self-insurance, purchased or established by or on behalf of any **EDUCATIONAL UNIT**, to insure against **CLAIMS** arising from activities of the **EDUCATIONAL UNIT** or its employees, regardless of whether or not the policy or program provides primary, excess, umbrella or contingent coverage.

In addition, Coverage A [Liability Coverage] is specifically excess over coverage provided by any **EDUCATIONAL UNIT'S** or school board's errors and omissions or general liability policies, purchased by the insured's employer or former employers, or self-insurance program or state pools, whether collectible or not, and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to a policy issued to the insured.

(DSMF ¶ 7). Risk Fund's Other Coverage Provision states:

**Insurance.**

If valid and collectible insurance is available to the Member for a loss covered by [Risk Fund] under any coverage parts within this Coverage Document, the obligations of [Risk Fund] are excess over the available and collectible insurance.

(DSMF ¶¶ 25, 27).

"Each [of these] excess clause[s] plainly attempts, in the circumstances of the instant case, to shift primary liability to the 'other insurance,' that is, the other policy. . . . Thus, the excess clauses cancel each other out, and pro rata distribution of liability is warranted." MAG Mut. Ins. Co., 185 F. App'x at 927; see, e.g., Allied Prop. & Cas. Ins. Co. v. Bed Bath & Beyond, Inc., No. 1:12-cv-01265, 2014 WL 1292456, at *10 (N.D. Ga. Mar. 31, 2014) ("[B]oth policies are primary unless other insurance applies, in which case both are excess. It follows that the clauses are irreconcilable. Therefore, the parties must share with Defendants, on a pro rata basis, any covered cost of defending [the insured] that was incurred before the exhaustion of the policy limits." (internal citations omitted)).

This conclusion is consistent with cases applying Georgia law to similar provisions in disputes over which insurer is responsible for providing coverage. In Philadelphia Indem. Ins. Co. v. First Multiple Listing Servs., Inc., 173 F. Supp. 3d 1314 (N.D. Ga. 2016), the court considered two competing "other insurance" provisions. The first stated: "If the Insured has any other insurance for Claims covered hereunder, the insurance provided by this Policy shall be excess over such other insurance, regardless of whether such other insurance is collectible or designated as primary or excess." Id. at 1322. The second provision stated: "Insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance available to any insured . . . ." Id. at 1323. The court concluded the provisions were irreconcilable: "Since the Other Insurance provisions in the two policies each purport to be excess over other insurance, the provisions cannot be reconciled and cancel each other out. As such, [the two insurance companies] share in liability pro rata." Id.; see also Valley Forge Ins. Co., 2009 WL 789612, at *5-7 (requiring a pro rata distribution of liability where (1) one policy stated: "This insurance is excess over any of the other insurance, whether primary, excess, contingent or any other basis," and (2) the second policy stated: "If there is any other valid and collectible insurance

for injury or damage covered by this agreement, . . . we'll apply this agreement as excess insurance over any part of any other insurance which provides [coverage]").

The reasoning in these cases is sound and applies here. The Court finds that Risk Fund is entitled to summary judgment on its request for a declaration that National's Other Coverage Provision is irreconcilable with Risk Fund's Other Coverage Provision, and that the parties "must share defense and indemnity coverage on a pro rata basis." ([22.1] at 23). Risk Fund's Motion for Partial Summary Judgment is granted, and National's Motion for Summary Judgment is denied.[4]

---

[4]    National argues its Other Coverage Provision trumps Risk Fund's Other Coverage Provision, because the former is a "super excess" clause—in that it "expressly provides that coverage . . . is excess to other available coverage whether that coverage is primary, excess or contingent"—and the latter is only a "simple excess" clause, "meaning it generally states that the coverage will be excess to other available insurance." ([26] at 13). This distinction has not been recognized in Georgia, is inconsistent with cases applying Georgia law, and finds limited support in cases from other jurisdictions. See Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 61 (1st Cir. 2000) (stating that "most courts" reject the theory that "the primary insurer [is] the one whose 'other insurance' clause [is] more general in scope, favoring instead the doctrine of mutual repugnancy, under which two insurers' excess clauses are thought to cancel each other out"); ([28] at 8-10 (collecting cases)). National's approach encourages "an exercise in meaningless semantics," State Farm Fire & Cas. Co. v. LiMauro, 482 N.E.2d 13 (N.Y. Ct. App. 1985), and risks igniting a "draftsmanship battle by which insurers seek to 'outspecific' one another in an attempt to shift the primary burden of a loss on to the other insurer involved," State Farm Mut. Auto. Ins. Co. v. U. S. Fid. & Guar. Co., 490 F.2d 407, 411 (4th Cir. 1974).

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary

Judgment [23] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial

Summary Judgment [22] is **GRANTED**.


**SO ORDERED** this 2nd day of June, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE