IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATIONAL CASUALTY
COMPANY,

        Plaintiff,

v.

GEORGIA SCHOOL BOARDS
ASSOCIATION-RISK
MANAGEMENT FUND,

        Defendant.

1:16-cv-691-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff National Casualty Company's ("National") Motion for Reconsideration [31] and Defendant Georgia School Boards Association-Risk Management Fund's ("Risk Fund") Motion for Reconsideration [32].

## I.    BACKGROUND[1]

### A.    Introduction

This is a dispute between an insurance company and a risk management agency. National and Risk Fund provide overlapping liability coverage to

---

[1] The facts, stated in this Order, are taken from the Court's June 2, 2017, Order [30] granting Risk Fund's Motion for Partial Summary Judgment and denying National's Motion for Summary Judgment.

members of a professional association. Each party contends that the other has primary coverage obligations for the liabilities claimed, and that its own coverage obligations are excess.

B.     Background Facts

National is an insurance company. (Defendant's Statement of Material Facts [22.2] ("DSMF") ¶ 1). The Professional Association of Georgia Educators ("PAGE") is a professional association of teachers and administrators. (DSMF ¶ 2). National issued insurance policies to PAGE for the July 1, 2012, to July 1, 2013, and July 1, 2013, to July 1, 2014, periods (together, the "Policies"). (DSMF ¶¶ 3-4). The Policies provide the following liability coverage to PAGE members:

> **Coverage A—Liability Coverage**
>
> The Company will pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of liability imposed by law or for monetary damages resulting from any **CLAIM** made against the insured arising out of an **OCCURRENCE** in the course of the activities of the insured in his/her professional capacity and caused by any acts or omissions of the insured or any other person for whose acts the insured is legally liable. The Company shall defend any suit seeking monetary damages which are payable under the terms of the policy, even if such suit be groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any **CLAIM** or suit as it may deem expedient.

(DSMF ¶¶ 5-6).

The Policies contain a provision limiting coverage for liabilities covered by "other insurance" (National's "Other Coverage Provision"):

> **Other Insurance**
>
> This policy is specifically excess if the insured has other insurance of any kind whatsoever, whether primary or excess, or if the insured is entitled to defense or indemnification from any other source whatsoever, including by way of example only, such sources as state statutory entitlements or provisions. Other insurance includes, but is not limited to, insurance policies, state pools, and programs of self-insurance, purchased or established by or on behalf of any **EDUCATIONAL UNIT**, to insure against **CLAIMS** arising from activities of the **EDUCATIONAL UNIT** or its employees, regardless of whether or not the policy or program provides primary, excess, umbrella or contingent coverage.
>
> In addition, Coverage A [Liability Coverage] is specifically excess over coverage provided by any **EDUCATIONAL UNIT'S** or school board's errors and omissions or general liability policies, purchased by the insured's employer or former employers, or self-insurance program or state pools, whether collectible or not, and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to a policy issued to the insured.

(DSMF ¶ 7).

Risk Fund is a risk management agency created under O.C.G.A. § 20-2-2001 *et seq.* (DSMF ¶¶ 16-17). It is an association formed by boards of education to

3

share their liability risks. (O.C.G.A. § 20-2-2001(6); DSMF ¶ 17).[2] Risk Fund's members include Columbia County Schools, Douglas County School District, Muscogee County School District, and McIntosh County Board of Education. (DSMF ¶¶ 20-23). Risk Fund "is not an insurance company or an insurer" under Georgia insurance law. O.C.G.A. § 20-2-2004.

Risk Fund's risk-sharing arrangement is set out in coverage agreements entered into by Risk Fund and its members (the "Coverage Agreements"). (DSMF ¶ 18). Under the Coverage Agreements, Risk Fund provides liability coverage to members and their employees, including PAGE members.[3] The coverage periods are July 1, 2012, to July 1, 2013, and July 1, 2013, to July 1, 2014. (DSMF ¶¶ 18, 20-23). Risk Fund's coverage includes liability coverage for personal injury, bodily injury, property damage, negligent acts, wrongful acts, and sexual abuse. (See [5.1]-[5.4]). Risk Fund is required to "pay [amounts a] Member becomes legally obligated to pay as damages" and to "defend . . . Member[s] against any

---

[2] The statute provides that an interlocal risk management agency is "an association formed by boards of education by the execution of an intergovernmental contract for the development and administration of an interlocal risk management program and one or more group self-insurance funds." O.C.G.A. § 20-2-2001(6).

[3] The Coverage Agreements define the boards of education and their employees, acting within the scope of their employment, as "members." (See, e.g., [5.2] at 14).

4

'suit' seeking those damages." (See, e.g., [5.3] at 30; see generally [5.1]-[5.4]). Risk Fund's members are jointly and severally liable "for all legal obligations" arising under the Coverage Agreements. (DSMF ¶¶ 18-19; O.C.G.A. § 20-2-2009). Unlike commercial insurance agreements, the school systems are liable for the losses required to be paid.

The Coverage Agreements contain a provision limiting coverage where insurance is available from another source (Risk Fund's "Other Coverage Provision"):

> **4. Insurance.**
>
> If valid and collectible insurance is available to the Member for a loss covered by [Risk Fund] under any coverage parts within this Coverage Document, the obligations of [Risk Fund] are excess over the available and collectible insurance.

(DSMF ¶¶ 25, 27).[4]

From 2014 to 2016, several lawsuits were filed against PAGE members covered under National's Policies and Risk Fund's Coverage Agreements (the "Covered Individuals"). (See DSMF ¶¶ 28-32). In June 2014, for example, an elementary school student filed a negligence action against his school principal, a

---

[4] This version of Risk Fund's Other Coverage Provision appears in the Coverage Agreement for July 1, 2012, to July 1, 2013. The version of the Other Coverage Provision in the Coverage Agreements for July 1, 2013, to July 1, 2014, omits the word "parts" but otherwise is identical.

PAGE member and employee of Columbia County School District. ([5.7]; DSMF ¶ 29). The student alleged that, as a result of the principal's negligence, he fell from a playground ladder and injured himself. ([5.7] ¶¶ 13, 17). In September 2015, a high school student filed a negligence action against her chemistry teacher, a PAGE member and employee of Douglas County School District. ([5.8]; DSMF ¶ 28). The student alleged that, as a result of the teacher's negligence, she was burned during a chemistry experiment. ([5.8] ¶¶ 5-23). Similar lawsuits have been filed against other PAGE members employed by Risk Fund's members, including employees of Columbia County School District, Muscogee County School District, and McIntosh County School District. (DSMF ¶¶ 30-32).

National refused to defend or indemnify these Covered Individuals until Risk Fund's coverage, under the Coverage Agreements, was exhausted. (See DSMF ¶¶ 33-38). National claims the Other Coverage Provision in the Policies requires National to pay amounts in excess of Risk Fund's obligations. Risk Fund contends that National is the primary insurer, and that Risk Fund provides only excess coverage. Because National refused to provide primary coverage or defend, Risk Fund defended the Covered Individuals, indemnified and paid settlement

6

amounts on behalf of the Covered Individuals pending resolution of this action. (See DSMF ¶¶ 33-38).

    C.    Procedural History

On September 16, 2016, National filed its Motion for Summary Judgment on its claim for declaratory relief and on Risk Fund's counterclaim for declaratory relief. Risk Fund also filed its Motion for Partial Summary Judgment, requesting a declaration that (1) "coverage owed to jointly covered persons under [National's Policies] is primary to coverage provided under" Risk Fund's Coverage Agreements, or (2) the parties "must share coverage owed to jointly covered individuals on a pro rata basis." ([22] at 1-2).

On June 2, 2017, the Court issued its order denying National's Motion for Summary Judgment and granting Risk Fund's Motion for Partial Summary Judgment [30] (the "June 2, 2017, Order"). The Court determined, interpreting Georgia law, that each party's coverage fell within the other party's Other Coverage Provision such that the two provisions were irreconcilable. Consistent with Georgia and Eleventh Circuit case law, the Court held that when such excess provisions are irreconcilable, the clauses "cancel each other out, and the liability is to be divided equally between them." State Farm Fire & Cas. Co. v. Holton, 205 S.E.2d 872, 874 (Ga. Ct. App. 1974). The Court found that Risk Fund and

National "must share defense and indemnity coverage on a pro rata basis." ([22.1] at 23). Risk Fund's Motion for Partial Summary Judgment was granted, and National's Motion for Summary Judgment was denied.

On June 22, 2017, National filed its Motion for Reconsideration under Rule 59 of the Federal Rules of Civil Procedure. National asks that the Court certify the judgment as final and appealable under Fed. R. Civ. P. 54(b) and stay the effects of the order pursuant to Fed. R. Civ. P. 62 while the appeal is pending.

On June 27, 2017, Risk Fund filed its Motion for Reconsideration. Risk Fund argues that the public policy of the State of Georgia to protect the public purse preempts application of the irreconcilable provisions rule.

**II.   DISCUSSION**

    A.   <u>The Motions for Reconsideration</u>

A district court has discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered. <u>See</u> Fed. R. Civ. P. 54(b); <u>see also</u> <u>Toole v. Baxter Healthcare Corp.</u>, 235 F.3d 1307, 1315 (11th Cir. 2000). A motion for reconsideration is generally appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. <u>See</u> <u>Jersawitz v. People TV</u>, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); <u>Pres. Endangered Areas of Cobb's</u>

History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

Risk Fund moves for reconsideration of the June 2, 2017, Order because it argues the Court did not consider that Risk Fund's resources used to pay losses and defend the Covered Individuals are public funds. Risk Fund argues that the cases the Court relied upon in finding the excess coverage provisions irreconcilable do not apply where one of the coverage providers is not an insurance company but instead an agency that pays claims and defense costs with funds provided by public school systems. Risk Fund contends that Georgia's policy protecting the public purse requires the Court to interpret the Coverage Agreements as a waiver of the State's sovereign immunity to provide only excess coverage. ([32.1] at 3). That is, Risk Fund appears to argue that the irreconcilable provisions rule only applies where private insurance carrier funds are at issue, and, where public funds are used to cover losses, the public policy of Georgia does, or should, preclude the application of the rule.

Risk Fund emphasizes that National is a for-profit, commercial insurer that charges premiums for the policies at issue. In contrast, Risk Fund is an interlocal risk management agency created by statute. Georgia law provides that Risk Fund "is not an insurance company or an insurer under" Georgia's insurance code, and

each of its Coverage Agreements states: "This Coverage Document is not an insurance contract." O.C.G.A. § 20-2-2004; ([5.1] [5.4]). Risk Fund does not charge a premium for the coverage provided and does not generate a profit from the members' participation in the fund. (Notice of Stipulated Facts ¶ 15). The member boards of education are required to make supplemental contributions using public funds, even if they have not submitted claims or if liabilities outstrip annual contributions. The members are jointly and severally liable for all liabilities covered by the coverage documents. O.C.G.A. § 20-2-2009. Furthermore, the authorizing statute provides:

> The exercise by a board of education or school system of the authority provided in this article shall not constitute the provision of liability insurance protection under Article I, Section II, Paragraph IX of the Constitution of the State of Georgia. The participation by a board of education or school system as a member of an agency authorized by this chapter shall not constitute the obtaining of liability insurance and no sovereign immunity of a board of education or school system shall be waived on account of such participation.

O.C.G.A. § 20-2-2020.

In light of Risk Fund's argument, the Court reviewed again those cases addressing irreconcilable excess coverage provisions insuring against the same risks. Upon review, all of the cases addressing irreconcilable, overlapping provisions appeared in contracts issued by traditional insurance companies. See State Farm Fire & Cas. Co. v. Holton, 205 S.E.2d 872 (Ga. Ct. App.1974); S.

Home Ins. Co. v. Willoughby, 182 S.E.2d 910 (Ga. Ct. App. 1971); Home v. Great Am. Ins. Co., 134 S.E.2d 865 (Ga. Ct. App. 1964); see also Am. Cas. Co. of Reading v. MAG Mut. Ins. Co., 185 F. App'x 921 (11th Cir. 2006).

The Court thus finds that the irreconcilable provisions rule has developed only in cases involving conflicts between commercial insurance policy provisions. Whether that rule applies to coverage provided by an entity entrusted with public funds implicates Georgia public policy and the interpretation of Georgia law. This Court determines that the question should be certified to the Supreme Court of Georgia, pursuant to Ga. Const. art. VI, § 6, ¶ 4; O.C.G.A. § 15-2-9(a); Ga. Sup. Ct. R. 46-48. See Wheatley v. Moe's Southwest Grill, LLC, 580 F. Supp. 2d 1324, (N.D. Ga. 2008).[5]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court Certifies the following question to the Supreme Court of Georgia:

> When an insurance policy issued by a commercial company (i) has a provision that states that the policy is excess to the liability of another

---

[5] The Court's certification of questions is not meant to limit the scope of inquiry by the Supreme Court of Georgia. Kitchen v. CSX Transp., Inc., 19 F.3d 601, 604 (11th Cir. 1994).

insurer overlapping coverage and (ii) that provision conflicts with the excess coverage provision in an insurance agreement issued by an agency created under O.C.G.A § 20-2-2002, does the irreconcilable provision rule (State Farm Fire & Cas. Co. v. Holton, 205 S.E.2d 872, 874 (Ga. Ct. App. 1974)) require each insurer to pay a pro rata share of the loss?

The entire record in this case, including copies of the briefs of both parties, is transmitted herewith.

**IT IS FURTHER ORDERED** that the Court **STAYS** this action including rulings on National's Motion for Reconsideration [31] and Risk Fund's Motion for Reconsideration [32], pending resolution of the two questions which are certified to the Supreme Court of Georgia.

**SO ORDERED** this 24th day of January, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE